UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

WILLIAM and MARIE UTNEHMER,  No. 11-12159

                        Debtor(s).
_____/

PATRICK and MARY CRULL,

                        Plaintiff(s),

     v.  A.P. No. 11-1239

WILLIAM and MARIE UTNEHMER,

                        Defendant(s).
_____/

Memorandum After Remand
_____

     Plaintiffs Patrick and Mary Crull were induced to invest in a limited partnership known as CW Development Partners by a formal private offering given to them by John Kwan, who was to be one of the general partners. The other general partner was to be defendant William Utnehmer. Under the terms of the offering, the Crulls would pay the partnership $100,000. Half would be treated as a loan, bearing 12% interest. The other half would be an equity interest, with 10% preferred annual return and a percentage of the profits.

1

When the Crulls agreed to invest and paid the $100,000, the parties memorialized their transaction in a "loan agreement" and a note for $100,000 signed by Utnehmer and Kwan. Under the terms of this agreement, the $100,000 was to be paid in full when the property was sold, or after 12 months, whichever came first. However, they also agreed that "$50,000 of this initial $100,000 loan is intended to be superceded by execution of formal operating agreement which will re-characterize $50,000 of the lender's interest to an investor's equity interest with a 10% annual preferred return and 35% participation in profits on the equity contribution on a prorated basis. Said operating agreement and formation of a Limited Liability Company is being drafted."

Although Utnehmer and Kwan completed the real estate development under the name of CW Development Partners, they never prepared a formal operating agreement because Kwan had credit problems and Utnehmer found it was "more convenient" to get the construction loan in his and his wife's name. However, Utnehmer at all times treated the Crulls as if there was an operating agreement incorporating the terms of their investment. He has never, at any time, disputed that the Crulls were entitled to an equity investment of $50,000. The Crulls were carried on the books of CW Development Partners as equity owners, and were paid monthly on the $50,000 which was to be a loan. In all respects, the Crulls were treated according to the terms of the private offering, not the $100,000 note. Utnehmer's counsel admitted the Crulls were investors entitled to a share of the profits.

Utnehmer certainly found it "more convenient" to operate without a formal operating agreement. He used his status as record owner of the property to refinance several times, with proceeds going both to partnership expenses, other business expenses and personal expenses, making a calculation of profits impossible. The only factual disagreement is this case is whether there were any profits. The Crulls cannot untangle the mess and show there were profits and Utnehmer is unable to show there were no profits.

Under California law, a joint venture is an undertaking by two or more persons to carry out a single enterprise jointly for profit. The same rules that apply to partnerships apply to joint ventures. They may be informal or oral. Whether a joint venture exists is a question of fact. *Pellegrini v. Weiss,*

2

165 Cal.App.4th 515, 525, 81 Cal.Rptr.3d 387 (2008). The court finds from the facts recited above that Utnehmer and the Crulls were partners in a joint venture to develop the real property at 1214 Abbot Kinney Boulevard, Venice, California, under the name CW Development Partners; that Utnehmer was the managing partner of the joint venture; that the Crulls are entitled to a share of the profits of the joint venture; and that due to his own machinations Utnehmer is utterly unable to determine if there were any profits or not.

Under the law as it existed when this case was tried, Utnehmer's failure to keep proper records and his cavalier self-dealing with assets of the joint venture meant that Utnehmer was liable to the Crulls for defalcation in a fiduciary capacity pursuant to § 523(a)(4) of the Bankruptcy Code without a showing of wrongful intent. However, after trial and while this case was on appeal the Supreme Court changed the law by imposing on beneficiaries the burden of proving an intentional wrong. The wrong must be reckless conduct of the kind that the criminal law often treats as the equivalent. *Bullock v. BankChampaign, N.A.,* 569 U.S. —, 185 L.Ed.2d 922, 928, 133 S.Ct. 1754, 1759 (2013).

In most cases, such a change in the law would call for a new trial. However, the court elects not to grant a new trial for two reasons. First, it is not clear that a new trial is within the scope of the remand. Second, when the Crulls filed their complaint in this case they alleged only two grounds for nondischargeability: that Utnehmer defrauded them, rendering their claim nondischargeable under § 523(a)(2), and that he willfully and maliciously harmed them such that their claim was nondischargeable under § 523(a)(6). Both of these claims required a showing of an intentional wrong. While the court permitted the Crulls to prove a case for defalcation under § 523(a)(4) because it arose out of the same facts alleged in the complaint, the Crulls nonetheless placed intentional misconduct at issue and failed to prove it. Accordingly, the court determines that a new trial is not appropriate in this case. The best the court will do for the Crulls is to require each side to bear their own fees and costs, both because a change in the law could not be foreseen and because Utnehmer's conduct, while not shown to be so wrongful as to meet the requirements of *Bullock*, was in blatant disregard of his partners' rights.

3

For the foregoing reasons, the court will enter a final judgment in favor of Utnehmer and providing that the Crulls shall take nothing by their complaint, with each side bearing its own fees and costs.

Dated: September 16, 2016

---
Alan Jaroslovsky
U.S. Bankruptcy Judge

4